**CRANEFIELD, Acting Regional Director of Seventh Region of National Labor Relations Board, v. BRICKLAYERS, STONE MASONS, MARBLE MASONS AND TILE LAYERS BENEVOLENT AND PROTECTIVE UNION NO. 1 OF GRAND RAPIDS, MICH., et al.**

Civil Action No. 1126.

District Court, W. D. Michigan, S. D.

June 23, 1948.

Robert N. Denham, Gen. Counsel, National Labor Relations Board, David P. Findling, Associate Gen. Counsel, National Labor Relations Board, Winthrop A. Johns, Walter N. Moldawer, and S. Brogdyne Teu, II, Attorneys, all of Washington, D. C., for petitioner.

M. Thomas Ward of Grand Rapids, Mich., for respondents.

STARR, District Judge.

On April 1, 1948, Harold A. Cranefield, acting Regional Director of the seventh region of the National Labor Relations Board (hereinafter referred to as "the Board"), filed petition in pursuance of section 10(*l*)[1] of the National Labor Rela-

---

[1] 29 U.S.C.A. § 160. "(*l*) Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) (A), (B), or (C) of section 8(b), the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any district court of the United States (including the District Court of the United States for the District of Columbia) within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudica-

tions Act, as amended by the Labor Management Relations Act of 1947, 29 U.S.C.A. § 141 et seq. (hereinafter referred to as "the Act"), for injunctive relief pending final adjudication of the Board with respect to the matters pending before it on charges filed by Osterink Construction Company alleging that respondents have engaged in and are engaging in conduct in violation of section 8(b), subsection (4) (A)[2] of the Act, affecting commerce within the meaning of section 2(6) and (7).[3] The charge filed with the Board by the Osterink Company, a copy of which was attached to the petition, states in part:

"That the said labor organizations and Behrens have engaged in and by coercion, intimidation, directions, orders, threats of reprisal and force, including 'fair' and 'unfair' lists, and union by-laws and disciplinary measures, and by permitting such to remain in existence and effect, have induced and encouraged the employees of an employer, namely, The Grand Rapids Tile and Mosaic Company, and employees of other subcontractors and suppliers of Osterink Construction Company, the charging party, in and near Grand Rapids, Michigan, to engage in strikes or concerted refusals in the course of their employment to perform any services, an object thereof being to force and require their said employers, Grand Rapids Tile and Mosaic Company, and said contractors and suppliers, to cease doing business with Osterink Construction Company.

"That the said labor organizations placed the charging party on the 'unfair' list and published its name as 'unfair' to the A. F. of L., and also published and distributed a list of employers 'fair' to the A. F. of L. who had signed contracts with said labor organizations and other unions affiliated with the Council, and so notified such affiliated unions, their members and contracting employers, and under their respective constitutions and by-laws penalized affiliated unions which refused to obey the mandate of the Council and employee members who should work for any subcontractor upon a contract which he takes from the charging party or from any other person who has been placed upon the 'unfair' list or who was not on the 'fair' list. That about October 30, 1947, acting pursuant to the laws and resolutions of said labor organizations, Behrens ordered Anthony Pontello and Louis Austhof, two employees of Grand Rapids Tile and Mosaic Company and members of the Brick-

---

tion of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law. * * * Upon filing of any such petition the courts shall cause notice thereof to be served upon any person involved in the charge and such person, including the charging party, shall be given an opportunity to appear by counsel and present any relevant testimony."

[2] 29 U.S.C.A. § 158. "(b) It shall be an unfair labor practice for a labor organization or its agents— * * *

"(4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: (A) forcing or requiring any employer or self-employed person to join any labor or employer organization or any employer or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person."

[3] 29 U.S.C.A. § 152. "(6) The term 'commerce' means trade, traffic, commerce, transportation, or communication among the several States, or between the District of Columbia or any Territory of the United States and any State or other Territory, or between any foreign country and any State, Territory, or the District of Columbia, or within the District of Columbia or any Territory, or between points in the same State but through any other State or any Territory or the District of Columbia or any foreign country.

"(7) The term 'affecting commerce' means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce."

layers' Union, to cease work upon a contract which their employer had taken from Osterink, and they were subsequently fined by the Bricklayers' Union."

Petitioner alleged that respondents, the Bricklayers' Union and the Building and Construction Trades Council, were labor organizations within the meaning of section 2(5)[4] of the Act, and that respondent Behrens was the president and business agent of the Bricklayers' Union. He further alleged that he had investigated the charge filed by the Osterink Company and that after his investigation he had reasonable cause to believe that the charge was true and that respondents, and each of them, had engaged in and were engaging in conduct in violation of section 8(b), subsection (4) (A), of the Act, affecting commerce within the meaning of section 2(6) and (7) of the Act. Petitioner asked that a rule be entered directing the respondents to appear and show cause why an injunction should not be issued enjoining and restraining them, pending final adjudication of the Board, from "calling, engaging in, or inducing or encouraging the employees of the Tile Company (Grand Rapids Tile and Mosaic Company) and other employers, subcontractors and suppliers of Osterink, by coercion, intimidation, directions, orders, threats of force or reprisal, including 'unfair' lists, 'fair' lists, and union by-laws and disciplinary measures, or by permitting any such to remain in existence or effect or by any other like acts or conduct, to engage in, a strike or a concerted refusal in the course of their employment, to transport or handle materials or perform any services in order to force or require the Title Company or such other employers or any other person to cease doing business with Osterink."

The court issued a rule directing respondents to appear and show cause why the injunctive relief prayed for should not be granted. The Bricklayers' Union and Behrens, as its business agent, filed answer admitting that the union was a labor organization within the meaning of the Act, but denying that they had engaged in unfair labor practices as charged and denying that they had committed any act affecting commerce within the meaning of the Act. Respondent Building and Construction Trades Council filed answer denying that it was a labor organization within the meaning of the Act and denying that it had engaged in or was engaging in any activity in violation of section 8(b), subsection (4) (A), of the Act. The matter came on for hearing before the court, and petitioner and respondents were represented by counsel and presented testimony.

Subsequent to the hearing on the petition, the Board by its representative conducted a hearing on the charge filed by Osterink Construction Company against the respondents, and the matter awaits the final adjudication of the Board.

It should be kept in mind that under section 10(*l*) of the Act, the court in the present proceeding does not consider or determine the controversy on its merits, and that its only province is "to grant such injunctive relief or temporary restraining order as it deems just and proper" pending the final adjudication of the Board. After due consideration of the petition and answers filed and the evidence presented by the respective parties, and consideration of the able briefs of counsel, the court makes the following findings of fact and conclusions of law:

### Findings of Fact

1. That petitioner is the acting Regional Director of the seventh region of the National Labor Relations Board, an agency of the United States government.

2. That respondent Bricklayers' Union, an unincorporated association, is a labor organization having its principal office within this judicial district and is engaged in, and at all times material hereto has been engaged in, promoting and protecting the interests of its employee members within this judicial district.

---

[4] 29 U.S.C.A. § 152. "(5) The term 'labor organization' means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."

3. That respondent Building and Construction Trades Council, an unincorporated association, is a labor organization having its principal office within this judicial district and is engaged in, and at all times material hereto has been engaged in, promoting and protecting the interests of its constituent unions and their employee members within this judicial district; and that the said Bricklayers' Union, together with other local unions in the building and construction trades in and near Grand Rapids, Michigan, are affiliated with the Building and Construction Trades Council.

4. That respondent Douglas F. Behrens, at all times material hereto, has been the president and business agent of the Bricklayers' Union and has been engaged in promoting and protecting the interests of its employee members within this judicial district.

5. That the charged unfair labor practices of respondents involved in this proceeding have occurred and are occurring within this judicial district.

6. That about March 30, 1948, Osterink Construction Company, pursuant to the provisions of the Act, filed an amended charge with the Board, alleging that respondents have engaged in and are engaging in unfair labor practices within the meaning of section 8(b), subsection (4) (A), of the Act, affecting commerce within the meaning of section 2(6) and (7) of the Act.

7. That it appears this charge was referred to petitioner, who caused an investigation to be made thereof.

8. That the Osterink Construction Company is a general contractor engaged in the building-construction business in the city of Grand Rapids, Michigan, and surrounding territory; that during the past year it received from the operation of its construction business the sum of approximately $470,000; that during this period it purchased materials for use in building construction of the value of about $164,000; and that a substantial part of the building materials which it purchased and which its subcontractors purchased originated outside the State of Michigan.

9. That as a result of a labor dispute, the respondent Building and Construction Trades Council in January, 1944, placed the Osterink Company on a so-called "unfair" list and so notified its constituent unions; that notice was published in the Grand Rapids Labor News that the Osterink Company was unfair to labor; and that about February 17, 1944, the council sent the following letter to certain employers with whom it and its constituent unions had contracts:

"The Osterink Construction Co. refuses to work with the various trades affiliated with the American Federation of Labor. We have found it necessary to picket jobs on which he has been employed.

"When a picket line is placed on a job, we know that it creates a hardship upon those furnishing supplies, if they are required to make unnecessary trips and are unable to deliver their products.

"Until the Osterink Construction Co. becomes fair with labor, it will be necessary for us to picket each of his jobs.

"To you, having always been fair with labor, we are giving this notification so you may save yourself the embarrassment and the cost of attempting to deliver supplies to Osterink Construction Co., and have imposed upon you the cost of hauling back.

"We would like your cooperation, and as soon as Osterink Construction Co. does become fair, we will notify you. In the meantime we would like to have you govern your business relationship, while with the Osterink Construction Co., that we both may continue our cooperative and friendly relations."

10. That in 1946 the respondent council published and distributed among its constituent unions and among so-called "fair" employers, a list or directory containing the names of "fair" employers; that the name of the Osterink Company was omitted from this list or directory of "fair" employers; that the name of the Osterink Company has not been removed from the list of "unfair" employers and is not included in the list or directory of "fair" employers; and that copies of this list or directory are still available for distribution.

11. That contracts made and entered into between the respondent council and certain employers provide in part as follows:

"The Company and the Union agree that all sub-let contracts shall be let to contractors recognized as Fair Contractors by the American Federation of Labor, and that all employees of sub-contractors, in all instances, shall be members of the American Federation of Labor."

12. That as a result of Osterink Company's name being placed and continued on the list of "unfair" employers and its omission from the list or directory of "fair" employers, the constituent unions of the council and their employee members have been induced, encouraged, and directed not to work for any subcontractor or supplier upon any contract with the Osterink Company.

13. That in 1946 Osterink Company as general contractor entered into a contract with the Grand Rapids Tile and Mosaic Company for the purchase and installation of the tile and terrazzo work in the Christian high-school building in Grand Rapids, Michigan; that the Tile Company began work on this contract about October 28, 1947; that on October 30th respondent Behrens as business agent of the Bricklayers' Union in effect directed the Tile Company employees (Anthony Pontello and Louis Austhof) to cease work, on the ground that they were violating the by-laws and rules of the Bricklayers' Union in working for the Tile Company on a subcontract made with the Osterink Company, which had been designated as "unfair" to labor; that pursuant to this direction and the threat of union disciplinary measures, the Tile Company employees ceased their work on the high-school building before the completion thereof and notified their employer of their refusal to continue; that in November, 1947, respondent Bricklayers' Union imposed fines against the Tile Company employees for having worked for a subcontractor on the school building for which the Osterink Company was the general contractor.

14. That from the evidence adduced there is reasonable cause to believe that respondents' conduct, acts, and doings, including the use of so-called "unfair" and "fair" lists, induced and encouraged employees of the Tile Company and employees of other contractors and suppliers to engage in concerted refusals to perform work or services in connection with the building projects of the Osterink Company, and that the object thereof was to force or require the Tile Company and other suppliers to cease doing business with the Osterink Company.

15. That there is reasonable cause to believe that the conduct, acts, and doings of respondents have a substantial relation to trade, traffic, and commerce among the several States and tend to lead to labor disputes burdening or obstructing the free flow of commerce.

16. That there is reasonable ground to believe that respondents' conduct, acts, and doings herein set forth constitute unfair labor practices within the meaning of section 8(b) (4) (A) of the Act.

17. That there is reasonable ground to believe that respondents have engaged in and, unless restrained and enjoined therefrom, will continue to engage in, unfair labor practices within the meaning of section 8(b) (4) (A) of the Act, affecting commerce within the meaning of section 2(6) and (7).

### Conclusions of Law

1. That this court has jurisdiction of the parties and the subject matter of this proceeding and, under section 10(*l*) of the Act, has authority to grant injunctive relief.

2. That respondents, the Bricklayers' Union and the Building and Construction Trades Council are labor organizations within the meaning of section 2(5) of the Act.

3. That respondent Behrens is the agent of the Bricklayers' Union, a labor organization, within the meaning of section 8(b) of the Act.

4. That there is reasonable cause to believe that respondents have engaged in, and unless restrained and enjoined therefrom will continue to engage in, unfair labor practices within the meaning of section 8(b) (4) (A) of the Act, affecting commerce within the meaning of section

2(6) and (7) of the Act, and that a continuation of these practices will impair the policies of the Labor Management Relations Act as set forth in section 1(b) thereof.[5]

5. That, pending the final adjudication of the National Labor Relations Board with respect to the matters and issues presented, it is appropriate that the respondents, and each of them, and their respective officers, agents, employees, and all persons acting in concert or participation with them be enjoined and restrained from the further commission or continuation of the conduct, acts, and doings set forth in the above findings of fact as tending to lead to labor disputes burdening or obstructing the free flow of commerce.

6. That, pending the final adjudication of the National Labor Relations Board, an injunction shall forthwith issue against respondents in accordance with this opinion.

---

[5] 29 U.S.C.A. § 141. "(b) * * *
"It is the purpose and policy of this Act, in order to promote the full flow of commerce, to prescribe the legitimate rights of both employees and employers in their relations affecting commerce, to provide orderly and peaceful procedures for preventing the interference by either with the legitimate rights of the other, to protect the rights of individual employees in their relations with labor organizations whose activities affect commerce to define and proscribe practices on the part of labor and management which affect commerce and are inimical to the general welfare, and to protect the rights of the public in connection with labor disputes affecting commerce."